**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

DON ISAAC B. RAMOS,
              Plaintiff

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,
           Defendants.

CA: 1:25-cv-9781

**Honorable Jorge L. Alonso**

**Magistrate Judge Daniel P. McLaughlin**

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY ELECTRONIC EMAIL AND/OR PUBLICATION**</u>

DON ISAAC B. RAMOS "Plaintiff," submits this Memorandum in support of this *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or electronic publication (the "*Ex Parte* Motion").

**MEMORANDUM OF LAW**

**I.       Introduction and Summary of Argument.**

Plaintiff brings this action against the Defendants identified in sealed Schedule A of the Complaint (Dkt. 1) for federal patent infringement. As alleged in the Complaint, Defendants engaged in the marketing, advertising, importation, distribution, offering for sale, and selling of Copycat STORAGE CONTAINER FOR GROCERY AND TRASH BAGS ' Products ("Infringing Products") in connection with Plaintiff's awarded United States Design Patent US D1 062,292 S("the **292 patent") through an online marketplace accounts set forth in Schedule A, also known as "Defendants Internet Store," each Defendant having one

or multiple identifying numbers, such as ASIN's, related to their specific Defendants Internet Store. Screenshots of the Copycat **STORAGE CONTAINER FOR GROCERY AND TRASH BAGS** Product provided by the various Defendant Internet Stores are shown in sealed Exhibit B of the Complaint. In short, Defendants run illicit Stores that sell infringing Products with disregard for anything except generating profits.

The Defendants created the Defendants Internet Store with the intent to have them appear to be selling licensed Official **STORAGE CONTAINER FOR GROCERY AND TRASH BAGS** Products, while in reality, they are selling Infringing Products, in violation of Plaintiff's patent rights and to unknowing consumers. Defendants have attempted to avoid liability by concealing both their identities and the full scope and interworking of their copycat operations. Plaintiff has filed this action to combat Defendants' infringing the **292 patent, as well as to protect consumers from purchasing, on information and belief, inferior product.

This court has personal jurisdiction over Defendants because Defendants target Illinois residents and have offered to sell, and on information and belief, have sold and continue to sell Infringing Products to consumers within the United States and in the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendants Internet Store through which Illinois residents can purchase copycat products being sold in connection with Plaintiff's Official STORAGE CONTAINER FOR GROCERY AND TRASH BAGS Products and the **292 patent.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this court issue an *ex parte* a Temporary Restraining Order. Specifically, Plaintiff seeks an order to (1) temporarily restrain Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Infringing Products; and (2)

temporarily restrain Defendants' assets to preserve Plaintiff's right to equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Infringing Products and Defendants' financial accounts; and (4) authorize service by electronic mail or electronic publication, due to the fact that Defendants is, on information and belief, located in China and Plaintiff, though with diligent effort, has been unable to locate them.

In light of the covert nature of off-shore design patent infringing activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, federal circuit courts regularly issue orders awarding such relief. *See Junjie Peng v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 21-cv-1344, at *4 (N.D.Ill. Sep. 14, 2021) ("Plaintiff persuasively argues that Defendants' infringement of the '062 Patent by the sale of the Infringing Products is likely to cause consumer confusion with genuine patented Products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill."); *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1338 (Fed. Cir. 2003) ("... Oakley sued Sunglass Hut on November 6, 2001, for, inter alia, infringement of the '902 patent, and sought a temporary restraining order ("TRO") … The court entered the TRO on November 20 …"); *Edge Systems LLC v. Aguila*, 635 F. App'x 897 *3-4 (Fed. Cir. 2015) ("The next month, Appellees' Emergency Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction was granted.").

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits of irreparable harm if the injunction is not granted, the balance of hardships falls in favor of Plaintiff, and it is in the public interest to grant this

temporary injunction. *Oakley, Inc*, 316 F.3d at 1338 ("A decision to grant or deny a preliminary injunction is within the sound discretion of the district court, based upon its assessment of four factors: (1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest.").

Regarding a design patent, infringement occurs "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs is substantially the same.". *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. at 432 (2016), *quoting*, *Gorham Co. v. White,* 14 Wall. 511, 525, 20 L.Ed. 731 (1872). In the present case and in view of the evidence of Defendants' Infringing Products (Dkt. 1, Exhibit B) and the designs covered in Plaintiff's **292 patent (Dkt. 1, Exhibit A), notably the implementation of the framing design in Plaintiff's STORAGE CONTAINER FOR GROCERY AND TRASH BAGS to the eye of an ordinary observer, being that of a purchaser, shows that the design in the **292 patent and the Infringing Products is even more than substantially the same, but is in fact alike.

Regarding a finding of irreparable harm may be found for a patentee when monetary damages are not remedial. *Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1328 (Fed. Cir. 2008)* ("?… infringement may cause a patentee irreparable harm not remediable by reasonable royalty"). Several factors have been used to consider when finding irreparable harm in patent infringement cases, including loss of market share and access to customers, a defendant's inability to satisfy the judgment, and direct competition between the patentee and infringer. *Robert Bosch LLc v. Pylon Mfg. Co., 659 F.3d 1142, 1150 ( Fed. Cir. 2011)* (Bosch points to evidence of: (1) loss of market share and access to customers; (2) Pylon's inability to satisfy a judgment; and (3) direct competition between it and Pylon in "each and every distribution channel ..").  The Seventh Circuit has found that likely customer confusion *{see, Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 902 (7th Cir. 2001)*, and interference *(see,*

*Life Spine, 8 F.4th 546)* can be used to support irreparable harm. In this case, evidence shown on Amazon shows defendants are active sellers of infringing products, garnering significant reputations among purchasers. The development of these reputations is harmful as Plaintiff is not able to establish that she is the true inventor and developer of this revolutionary design. Defendant, by advertising and selling an infringing product, is building a reputation that should rightly belong to Plaintiff for the popularity of its claimed design. These harms may not be repairable merely by monetary damages as Plaintiff has lost. Significant opportunity to build its reputation for the claimed design and consumers associate the claimed design with Defendants.

Regarding the balance of hardships between the parties, as Plaintiff has a sincere interest in enforcing its patent rights, the balance of hardships weighs in favor of Plaintiff. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1338 (Fed. Cir. 2012) ("the balance of hardships weighs in Apple's favor because it has an interest in enforcing its patent rights."); *See also, Moen, Inc. v. Foremost International Trading Inc.*, 19 F. Supp. 2d 854, 856 (N.D. Ill. 1998) ("… Moen's position, essentially, is that if Foremost is allowed to continue and, inevitably, expand its previous course of conduct — e.g., it has sold its accused product to Home Depot and Wal-Mart — there could well be a substantial erosion …") The public interest is further served by granting Plaintiff this temporary restraining order. *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("public policy favors protection of the rights secured by the valid patents."); *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) ("Here, the district court found, with respect to most of Abbott's products involved in this proceeding, that the public interest in enforcing valid patents outweighed any other public interest considerations. We cannot hold that the district court's public interest analysis provides a basis for us to disturb its grant to Hybritech of preliminary relief.")

Joinder in this case of these defendants is proper as the defendants all referred to Plaintiff's claimed design when creating their respective infringing products. On information and belief, the defendants themselves are not manufacturers, but rather acquire their infringing products from the same manufacturer. They then offer these infringing products usually on the same platform, that being Amazon.com.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this court has the power to bind third parties, such as online platforms like Amazon.com and financial institutions, who are in active concert with the Defendants, or who aid and abet Defendants and are given actual notice of the order. *See Surgibit Ip Holdings Pty, Ltd. v. Ellis*, Civil Action No. 13 CV 8839, at *10 (N.D. Ill. Oct. 14, 2015) ("Rule 65(d)(2)(C), which binds an injunction to "other persons who is in active concert or participation with [the parties]."); *Mattel, Inc. v. Entities Doing Bus. on Amazon.com Under Brand Name Barbegio*, 20-cv- 11069 (AJN), at *1 (S.D.N.Y. Mar. 5, 2021) ("Plaintiff simultaneously filed under seal an *ex parte* motion for attachment and temporary restraining order to prevent Defendants from transferring or withdrawing their funds from Amazon.com .") Similarly a pre- judgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 35 U.S.C. § 289. Finally, an order authorizing service of process by email and/or electronic publication is proper as a result of Defendants' intentional efforts to conceal their identities and operate their businesses online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.      STATEMENT OF FACTS.

### A.      Plaintiff's STORAGE CONTAINER FOR GROCERY AND TRASH BAGS

**patent (\*\*292) and corresponding Products**

Plaintiff's STORAGE CONTAINER FOR GROCERY AND TRASH BAGS products ("STORAGE CONTAINER FOR GROCERY AND TRASH BAGS "), based upon the \*\*292 patent, is recognized as an inventive STORAGE CONTAINER FOR GROCERY AND TRASH BAGS, a dual-purpose wall-mounted storage container designed to organize and dispense grocery and trash bags. It features top and side openings for easy bag insertion and retrieval, along with a secure slot for mounting. Its compact and rounded design helps keep your kitchen or utility space neat while allowing quick access to reusable bags. DEWITTY DECL. Since the \*\*292 patent issued on February 18, 2025, the STORAGE CONTAINER FOR GROCERY AND TRASH BAGS has increasingly become popular online, spurring tens of hundreds of infringing products. On information and belief, STORAGE CONTAINER FOR GROCERY AND TRASH BAGS products are sold around the world via distributors and retail outlets, and hundreds of thousands of units around the globe have been sold. Online sales of STORAGE CONTAINER FOR GROCERY AND TRASH BAGS products have represented a significant portion of Plaintiff's business. DEWITTY DECL. Plaintiff designed, patented, and launched its STORAGE CONTAINER FOR GROCERY AND TRASH BAGS products long before Defendants' acts described herein. The plaintiff is the owner of the \*\*292 patent, whereby the \*\*292 is valid and enforceable. A true and correct copy of the \*\*292 patent is attached to the Complaint (Dkt. 1, Exhibit A).

The \*\*292 is a valid patent that was subject to intense pre-allowance examination. *See, High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 9 (Fed. Cir. 2015) ("Design patents is presumed to be valid."); *See also,* 35 U.S.C. § 282.


**B.      Defendants' Unlawful Activities.**

The success of the STORAGE CONTAINER FOR GROCERY AND TRASH BAGS product has resulted in it being copied. DEWITTY DECL. Defendants intentionally copied the STORAGE CONTAINER FOR GROCERY AND TRASH BAGS design due to its market success, including online market success, which resulted from the 'Infringing Products' made from durable materials that have top and side openings for easy bag insertion and retrieval, along with a secure slot for mounting. Plaintiff has established that Defendants sell Infringing Products to consumers in the United States and the State of Illinois, including within the Northern District of Illinois. DEWITTY DECL. Internet Store, like Defendants Internet Store, i.e., those owned by The Partnerships and Unincorporated Associations of Schedule A, attached hereto, whereby they possess identifiers such as their respective identifying numbers, like ASINs ("Amazon Standard Identification Number"), is estimated to receive millions of visits per year and to generate over millions in annual online sales. DEWITTY DECL. A sample of Defendants' Infringing Products is shown in Exhibit B of the Complaint. DEWITTY DECL. As can be shown, the various copycat versions possess encasement and actuation mechanisms, which are totally the same as Plaintiff's STORAGE CONTAINER FOR GROCERY AND TRASH BAGS Products, and thus, they infringe the **292 patent.

Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from its accounts to off-shore bank accounts outside the jurisdiction of this court. Indeed, analysis of transaction logs from similar cases brought by other patent owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this court. DEWITTY DECL.

The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identity of the Defendants. DEWITTY DECL.

### III.     ARGUMENT.

### A.     A Temporary Restraining Order is necessary in this case to maintain the status quo of monetary accounts.

The purpose of a temporary restraining order is to preserve the status quo until the court has an opportunity to conduct a hearing on a preliminary injunction. *Bank Direct Capital Fin., LLC v. Capital Premium Fin., Inc*., No. 15 C 10340 (N.D. Ill. Nov. 29, 2017) quoting, *Garcia v. Yonkers School Dist*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation *in status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.") Plaintiff requests relief in the form of preservation of this long-standing status quo. Defendants want to disrupt this status quo in dramatic fashion by introducing their infringing designs for sale in online Stores. In circumstances like these, courts often grant preliminary relief. *Junjie Peng v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 21-cv-1344, at *12 (N.D. Ill. Sep. 14, 2021) ("a court ought not reward a business built on an infringing product by allowing that infringement to continue in the face of a proper application for preliminary relief."; *GENENTECH, INC. v. NOVO NORDISK*, 935 F. Supp. 260, 265 (S.D.N.Y. 1996) ("On June 14, 1995, this court issued a temporary restraining order to preserve the *status quo* pending the court's ruling on Genentech's motion for a preliminary injunction. On June 28, 1995, this motion was granted."). Freezing of bank accounts and financial accounts has been recognized as a means of maintaining the status quo. *See Church & Dwight Co. v. Kaloti Enterprises of Michigan, L.L.C.,* 07 Civ. 0612 (BMC), at *2 (E.D.N.Y. Jan. 30, 2012) ("this court issued a Temporary Restraining Order freezing all bank accounts "used by" Y&P Wholesale. Pursuant to this Order, three bank accounts in the name of Y&P Imports were frozen."); *See also, N. Atl. Operating Co. v. Scott*, No. 16-12076 (E.D. Mich. July 1, 2016) (granting TRO in view of the courts view that Defendants is likely to

change, destroy, or delete evidence related to any counterfeit activity, including existing online marketplace accounts and associated records, and transfer or hide any assets from their financial accounts, including PayPal accounts). In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, redirect traffic to other stores in their control, and move any assets from U.S.-based accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*, 18 C 4651, at *2 (N.D. Ill. Mar. 14, 2019) ("It noted that "[c]ourts has recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis.").

Plaintiff respectfully requests that this court issue the requested ex parte temporary restraining order to maintain the status quo.

**B.      This court has original subject matter jurisdiction, as well as personal jurisdiction over Defendants.**

This court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents …").

This court has personal jurisdiction over Defendants as in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this Judicial District, and/or derive substantial revenue from business transactions in Illinois and in this Judicial District and/or otherwise avail themselves

of the privileges and protections of the laws of the State of Illinois such that this court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to has consequences in Illinois and this judicial District, for example Defendants' Internet Store accept orders for Infringing Products from and offer shipping to Illinois addresses located in this Judicial District.  Screenshots of the shopping cart from Defendants' Internet Store allowing Counterfeit Products to be shipped to this Judicial District are attached as Exhibit B.

The venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants has committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, has registered agents in this Judicial District, and/or reside or may be found in this district.

**C.        Standard for Issuance of a Temporary Restraining Order.**

Plaintiff is seeking a temporary restraining order is required to show a likelihood of success on the merits, a balance of hardships tipping in the Plaintiff's favor, and the likelihood of irreparable harm if the temporary restraining order is not granted.  *Deckers Outdoor Corp. v. Partnerships*, No. 13 C 2167, at *3 (N.D. Ill. March 27, 2013) (temporary restraining order if (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." and " a plaintiff must demonstrate (1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at

law" *Deckers Outdoor Corp. v. Partnerships*, No. 13 C 2167, at *3 (N.D. Ill. Mar. 27, 2013). The public interest is a further consideration. *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) ("that the public interest would not be disserved by a permanent injunction."), *discussing eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

This District court has held that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction is identical. *Deckers Outdoor Corp. v. Partnerships*, No. 13 C 2167, at *3 (N.D. Ill. Mar. 27, 2013) ("The standard for the issuance of a TRO is the same standard that is applied for the issuance of a preliminary injunction"). The Supreme court has reminded district courts considering requests for injunctive relief in patent cases that the traditional rules of equity apply to such an application, including the requirement that the movant demonstrate the likelihood of irreparable harm. *Canon Inc. v. GCC Int'l Ltd.*, 450F. Supp. 2d 243, 251 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008) (citing e*Bay, Inc. v. MercExchange, L.L.C.*, 547U.S. 388, ——, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006)).

1.      **Plaintiff will likely succeed on the Merits of its Patent Infringement Claim.**

To obtain temporary injunctive relief, Plaintiff must show some likelihood of success on the merits. *See Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1366 (Fed. Cir. 2008); *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1988) (rejecting argument that patentee must prove infringement and validity "beyond question" in order to secure a preliminary injunction). For patents, the likelihood of success rests upon the validity of the patent and infringement. *Abbott Laboratories*, at 1368 (Fed. Cir. 2008) ("In seeking a preliminary injunction pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to the validity of its patent and with respect to infringement of its patent .")

1

a. **Plaintiff can establish the validity of the \*\*292 patent.**

Whereas an issued design patent is presumed valid, Plaintiff's patent was subjected to a high degree of examiner scrutiny during the patent prosecution process. DEWITTY DECL. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 9 (Fed. Cir. 2015) ("Design patents are presumed to be valid."); *See also,* 35 U.S.C. § 282. To challenge Plaintiff's request for emergency relief, it is Defendants' burden to prove that Plaintiff's patent is invalid. *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("in the context of a preliminary injunction ... the burden of proving invalidity is with the party attacking validity"). Under Federal Circuit precedent, Defendants' must do more than raise a "substantial question." Defendants must present evidence sufficient to convince the court that Plaintiff is unlikely to succeed on the merits of its validity claim. *Abbott*, 544 F.3d at 1364 ("the correct standard is not whether a substantial question has been raised, but whether the patentee is likely to succeed on the merits, upon application of the standards of proof that will prevail at trial"). The plaintiff has a strong likelihood of success with respect to the validity of the \*\*292 patent.

b. **The plaintiff can establish infringement of the design patent.**

In design patent law, a design patent is determined to be infringed based on the eye of the ordinary observer. *Hosley International Trading Corp. v. K Mart Corp.*, 237 F. Supp. 2d 907, 910 (N.D. Ill. 2002) ("In order to find design patent infringement, two distinct tests of comparison must be satisfied: (1) the "ordinary observer" test, and (2) the "point of novelty" test. "); *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016)"). 'Substantially similar' is generally the question to be addressed in judging design patent infringement. *Egyptian Goddess v. Swisa*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a

comparison of the claimed and accused designs with the prior art,").  As shown in Chart 1

below, Defendants' Infringing Products are exactly the same as Plaintiff's.  For brevity,

Plaintiff has only included a few examples of Defendants' Infringing Products.



| Design of **292 patent | Defendants Copycat (samples) |
|---|---|
| FIG.3 | KAOHSTNFS (a.k.a. HEFEIKANTINGDIANZISHA NGWUYOUXIANGONGSI) ASIN: B0DQCV9CCG |
| FIG.3 | SHIMENG20 (a.k.a. ZHU ZHOU SHI SHI MENG MAO YI YOU XIAN GONG SI) ASIN: B0CNKC2H1D |

**CHART 1: Comparison of **292 design, sample Defendants' copycat**

In the eye of an ordinary observer, Defendants' Infringing Products are extraordinarily

similar, if not exactly alike, to the designs of the **292 patent.  Plaintiff will thus likely be

successful in their assertion of infringement.

## 2.     Plaintiff will suffer Irreparable Harm without Injunctive Relief.

Irreparable harm may be found for a patentee when monetary damages are not remedial. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("… infringement may cause a patentee irreparable harm not remediable by a reasonable royalty"). Several factors have been used to consider when finding irreparable harm in patent infringement cases, include loss of market share and access to customers, a defendant's inability to satisfy judgment, and direct competition between the patentee and infringer. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1150 (Fed. Cir. 2011) ("Bosch points to evidence of: (1) loss of market share and access to customers; (2) Pylon's inability to satisfy a judgment; and (3) direct competition between it and Pylon in "each and every distribution channel …"). The Seventh Circuit has found that likely customer confusion (*see*, *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001)), and interference (*see*, *Life Spine*, 8 F.4th 546) can be used to support irreparable harm.

In this case, these defendants are selling infringing products that are garnering, on information and belief, hundreds of reviews per month, and likewise reputations are built. Plaintiff is thus losing the ability to build his own reputation.  It is known in the industry online reputations can significantly impact a business's future.[1]

## 3.     The Balance of Hardships weighs strongly in favor of granting Plaintiff Injunctive Relief.

As noted above, if the court is satisfied that Plaintiff has demonstrated (1) a likelihood

---

[1] 'The Impact of Reviews and Ratings on Amazon Business Value', quietlight.com/the-impact-of-reviews-and-ratings-on-amazon-business-value/#:~:text=Put%20simply%2C%20the%20quantity%20and,will%20further%20reduce%20your%20traffic (accessed September 11, 2025.)

of success on the merits, (2) the threat of irreparable harm if preliminary relief is not granted, and (2) there is no adequate remedy at law, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *See Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256. As infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the patent owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Therefore, the balance of harms "cannot favor a Defendants whose injury results from the knowing infringement of the Plaintiff's patent." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996). Plaintiff will continue to suffer from the inability to exercise the monopoly created under the **292 patent.

As Plaintiff has shown, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**4.    Issuance of the Injunction is in the Public Interest.**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion stop Defendants from violating federal patent law and ensure consumers receive authentic product. The public is currently under the false impression that Defendants are operating their Defendants Internet Store with Plaintiff's approval and endorsement.

The public interest is served by protecting "the synonymous right of a patent owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to

prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of patent and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of **292 STORAGE CONTAINER FOR GROCERY AND TRASH BAGS patent is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.     ARGUMENT.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. *Chicago United Industries v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006) ("The proper interpretation of the "without notice" language in Rule 65(b) is that the rule imposes *additional* restrictions on temporary restraining orders issued without notice"). Moreover, under Federal Rule of Civil Procedure 65(d)(2)(c), as stated above, this court has the power bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

## A.     A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's **292 patent is appropriate.

Plaintiff requests a temporary injunction requiring the Defendants to immediately

cease the marketing, sale, importation, and/or distribution of the Infringing Products, which on information and belief, supported by evidence herein, in connection with Defendants' Internet Store. Such relief is necessary to stop the ongoing and irreparable harm to Plaintiff, continuing infringement of the **292 patent, harm to consumers through the sale of Infringing Products, and to prevent the Defendants from continuing to benefit from their infringement of the **292 patent.

The need for *ex parte* relief is magnified in today's global economy where patent infringers manufacturing copycat and knock-off can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both true identity and location of the Defendants, as well as other Defendants Internet Store(s) used to distribute Copycat and Knock-off STORAGE CONTAINER FOR GROCERY AND TRASH BAGS Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of an issued patent. *See, e.g., Moen, Inc. v. Foremost International Trading Inc.*, 19 F. Supp. 2d 854, 857 (N.D. Ill. 1998) ("Plaintiff/movant has met the requirements for the grant of a preliminary injunction. It is hereby ordered that a preliminary injunction as requested is entered in favor of the Plaintiff"); *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1338 (Fed. Cir. 2003) ("... Oakley sued Sunglass Hut on November 6, 2001, for, inter alia, infringement of the '902 patent, and sought a temporary restraining order ("TRO") … The court entered the TRO on November 20 …"); *See also, In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2nd Cir. 1979) (holding that *ex parte* temporary restraining orders is indispensable to the commencement of an action when they is the sole method of preserving a state of affairs in which the court can provide effective final relief.)

**B.        Preventing the Fraudulent Transfer of Assets is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Knock-off and Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of its assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when Plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claim, so according to 35 U.S.C. § 284, Plaintiff is entitled to "damages adequate to compensate for the infringement … together with interest and costs..." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringing acts. Therefore, this court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff. The Supreme court in Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.,527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. In Lorillard Tobacco Co. v. Montrose Wholesale Candies, No. 03 C 4844, Consolidated with No. 03 C 5311 (N.D. Ill. Nov. 8, 2005), because the tobacco company sought a disgorgement of the store owner's profits, an equitable remedy, the court found that it had the authority to freeze the store owner's assets. *Id.; See also, CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th

Cir. 2002) ("since the assets in question … were the profits of the [Defendants] made by unlawfully stealing [the Plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move its ill-gotten funds to off-shore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

**C.** **Plaintiff is entitled to Expedited Discovery.**

The Supreme court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (*quoting, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. Id. (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown Defendants. See Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery

requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this court has the power to bind any third party who is in active concert with the Defendants and is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is awis that the same third parties, in previous lawsuits, has worked with patent owners and is not awis of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

**D.      Service of Process by Email and/or Electronic Publication is Warranted in this Case.**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this court's authorization to serve the process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an email to any email addresses provided for Defendants by third parties that includes a link to the website. Plaintiff submits that providing notice via electronic publication and/or email, along with any notice that Defendants receive from a third party such as Amazon, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the

action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) has provided false name and physical address information in their registration for the Defendants Online Marketplace Accounts in order to conceal their locations and avoid liability for its unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of Defendants may be apprised of the pendency of this action. Authorizing service of process solely via email and/or electronic publication will benefit all parties and the court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

Past investigation and discovery of Online Marketplace Accounts in similar cases reveal that Defendants appear to have provided false physical address information to the online marketplaces in order to avoid full liability. DEWITTY DECL. Identical contact information among multiple seller accounts also suggests that many of the aliases used to register the Defendants accounts is used by the same individual or entity. DEWITTY DECL.

Federal Rule of Civil Procedure 4(f)(3) allows this court to authorize service of process by any means not prohibited by international agreement as the court directs. *See, In re Oneplus Tech. (Shenzhen) Co.*, No. 2021-165, at *6 (Fed. Cir. Sep. 10, 2021) ("however, Rule 4(f)(3) is not a "last resort" or a type of "extraordinary relief" for a plaintiff seeking to serve process on a foreign Defendants"); *See also, Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). ("To the contrary, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing."). The Ninth Circuit in *Rio Properties* held, "without hesitation," that the email

service of an online business Defendants "was constitutionally acceptable." *Rio Props.,* at 1017. The court reached this conclusion, in part, because the Defendants conducted its business over the Internet, used email regularly in its business, and encouraged parties to contact it via email. *Id.*

Plaintiff submits that allowing service solely by email and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of Defendants to conduct their Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* court explained, Rule 4(f) does not create a hierarchy of preferred methods of service or process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief" but is rather one means among several by which an international Defendants may be served. *Id.* As such, this court may allow Plaintiff to serve the Defendants via electronic publication and/or email.

Plaintiff respectfully requests this court's permission to serve Defendants via email and/or electronic publication.

## V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). It is well established in the Second Circuit that Rule

65(c) invests the district court wide discretion as to the amount of security required, lf any.

*See Doctor's Assocs. v. Distajo,* 107 F.3d 126, 136 (2d Cir. 1997). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringement. Plaintiff respectfully requests that this court require Plaintiff to post a bond of five-thousand dollars ($5000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.      CONCLUSION.

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED:  September 11, 2025         Respectfully submitted,

_____
Robert M. DEWITTY
D&A|RM DeWitty, U.S. Pat. Attys. LLC

1500 K Street, 2nd Fl., RM213
Washington, D.C. 20005

141 W. Jackson Blvd.
Chicago, IL 60604
Tel: 202-571-7070 / 202 888-4309
Email: rmdewitty@dewittyip.com